IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEIDA G.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 C 8961 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| LELAND DUDEK, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Nearly ten years ago, the plaintiff suffered a heart attack and applied for Social Security disability benefits. Little did she know that in doing so she began an ordeal that would encompass three trips through the Social Security Administration and a couple of side trips to the Federal District Court over the course of a decade. She was born on June 1, 1962. (R. 338). She worked most of her life and held a variety of jobs such as working in factories and in housekeeping, in a data entry job for a medical supplier, and most recently on an assembly line, packing products. (R. 430). She began paying into Social Security from those jobs in 1979 when she was seventeen and, aside from a break from 1989 to 1993, continued to do so until 2015 when she claims that, at age 53, she became unable to work after suffering a heart attack. (R. 36, 369). She has coronary artery disease and has had two coronary artery bypass grafts. She has peripheral vascular disease in the right leg, along with diabetes and resultant neuropathy. She has had to have toes on her right foot amputated.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

She also has degenerative disc disease in her lumbar spine along with stenosis. She takes a pharmacy full of medications for her blood pressure, diabetes, cholesterol, neuropathy, pain, and heart issues. (R. 411).

By any measure and whether the plaintiff meets the Social Security Administration's definition of disabled or not, that is undeniably a lot to go through! And, unfortunately, the plaintiff was going to have to go through even more. She applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381a, 1382c , in September and October of 2015. (Administrative Record (R.) 338-48). She claimed that she became disabled as of June 25, 2015, due to neuropathy, congestive heart failure, coronary artery disease, diabetes, and spinal stenosis. (R. 338, 368-69). She then had a three-year wait while her claim was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council.

Once that was over, the plaintiff sought to overturn the denial of her application by filing suit under 42 U.S.C. § 405(g) back on September 7, 2018. Her case was assigned to a district court judge and was fully briefed as of April 4, 2019. Nothing further happened before that first judge for about a year. Then, on February 28, 2020, the Executive Committee, following standard procedures, randomly reassigned the plaintiff's case to a newly appointed judge. The plaintiff's case went to that new judge along with 312 other pending cases so, for all practical purposes, plaintiff was back to square one in federal district court. Another two and a half years elapsed with no activity from the court or the parties until the parties finally consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on August 10, 2022. *See, generally, Leida G. v. Kijakazi*, No. 18 C

2

6129, 2022 WL 4367171, at *1 (N.D. Ill. Sept. 21, 2022).[2] I granted the plaintiff's motion for a remand of her case a little over a month later on September 21, 2022. There were major issues in terms of articulation and support for the ALJ's finding that the plaintiff's condition did not meet or equal the listings at Step 3. Because the ALJ provided no explanation for why certain readings did not meet Listing 4.12, and cited certain evidence that appeared irrelevant, *Leida G.*, 2022 WL 4367171, at *4-5, the remand order included the direction that the ALJ employ a medical expert to explain things on remand. *Leida G.*, 2022 WL 4367171, at *6.

After waiting two years while her claim was in district court, and having been out of work for six years, the plaintiff filed another application for disability benefits, this time for Supplemental Security Income (SSI) alone, on September 21, 2021. The results this time were starkly different. On December 30, 2021, the plaintiff was found presumptively disabled as of September 21, 2021 (R. 1458) under the very Listing just discussed, because she had:

> severe PAD and equals 4.12D, PAD with right TBI less than .4. Evidence does not specifically establish current intermittent claudication, but the PAD remains even after revascularization and she also has a non-healing right foot DM ulcer that is down to the bone, along with several other comorbidities resulting in chronic pain and the need for a cane to ambulate.

(R. 1460). Because plaintiff's September 21, 2021 application was for SSI, she could not before disabled or receive benefits prior to the date of her application. Her SSI is also quite a bit less than would be DIB, because DIB is tied to the contributions to the system working people make over their working lives; SSI is a need-based program. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019) For

---

[2] It would be unfair to discuss the failings of one bureaucracy in this case and merely gloss over the slow pace of another. Unfortunately, like the Social Security Administration, the court system did not do too well by the plaintiff either. Having a plaintiff wait four years for a decision is far from optimal, although one or both of the parties may having been able to speed things up a bit by consenting to the jurisdiction of a magistrate judge earlier on in the process.

plaintiff, the difference in benefits between SSI and DIB would be about $350 a month. [Dkt. #17, at 1 n.2]. So, it was important for plaintiff to continue to pursue her original claim for DIB.

The remand of that original claim was slowly making its way through the Social Security system for the second time. It took a year before the plaintiff had another administrative hearing on September 22, 2023 (R. 1409-21), and another several months before she had a supplemental hearing on April 25, 2024 (R. 4510-29).[3] Inexplicably, despite the court's September 21, 2022 Order, neither proceeding included the testimony of a medical expert. In a rather confusing Opinion, which the Commissioner's lawyer has conceded is marred by mistakes [Dkt. #22, at 2-4][4], the ALJ denied the plaintiff's claim again on June 17, 2024. (R. 1375-1400). Despite the December 30, 2021

---

[3] The April 25, 2024 hearing transcript was missing from the leviathan, 4517-page administrative record the Commissioner filed on November 22, 2024. [Dkt. #10]. So, the Commissioner filed a supplemental transcript on January 31, 2025 [Dkt. #16-1] and an apparent duplicate of that supplemental transcript on March 18, 2025. [Dkt. #20-1]. Of course, neither the original *nor* the duplicate included testimony from a medical expert.

[4] The ALJ knew that the plaintiff had been found disabled and entitled to SSI as of September 21, 2021 (R. 1376) but inexplicably concluded that the plaintiff "has not been under a disability, as defined in the Social Security Act, from June 25, 2015, through the date of this decision", June 17, 2024. (R. 1400). That's a blatant error as the Commissioner concedes. Just imagine receiving that in the mail and thinking the SSI benefits you had recently been found entitled to were being cut off. The ALJ also messed up the date that plaintiff was found entitled to SSI a couple of other times, saying she did not meet the listings "[p]rior to December 21, 2021" (R. 1382) and that she was able to perform a limited range of sedentary work "prior to December 21, 2021" (R. 1383). Obviously, as the Commissioner again has to concede, both of those findings were incorrect. The ALJ also got the date the plaintiff's insured status expired wrong, stating it was a year earlier – December 31, 2019 (R. 1378) – than it actually was.

Plaintiff was insured through December 31, 2020, which is clear from multiple records. (R. 352, 1405, 1453, 1454, 1460, 1604, 1607). This error appears to be the product of the ALJ relying on an entry from a worker in a field office (R. 365, 414, 442) rather than the official earnings records of which there were many to go by. (R. 352, 1405, 1453, 1454, 1460, 1604, 1607). To make matters worse, it's not as though these errors are embedded here and there in the text of a lengthy opinion. We all leave mistakes like that in documents even after proofreading; there may even be one or two in this opinion. But, these errors are in the ALJ's brief, enumerated findings in bold-faced type. The Commissioner says all these mistakes are "bothersome." [Dkt. #22, at 3]. The court would submit they are worse than that, especially in the context of everything else.

4

determination, the ALJ found that the plaintiff "not been under a disability, as defined in the Social Security Act, from June 25, 2015, through the date of this decision." (R. 1400). On September 26, 2024, the plaintiff filed suit under 42 U.S.C. § 405(g) again, and the case was assigned to me under Local Rule 40.3(c). Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

Since the plaintiff filed her original application, seven different individuals have been in charge of the Social Security Administration: Carolyn Colvin (twice), Nancy Berryhill, Andrew Saul, Kilolo Kijakazi, Martin O'Malley, Michelle King, and Leland Dudek. So, this was an old case the first time around, and it's only gotten older. And, given the tone of the Commissioner's brief – which is pitch-perfect and well-written (as is the plaintiff's) – it is no secret that it has become more frustrating with the ALJ's most recent decision. As such, we need not beat around the proverbial bush. Mistakes regarding dates are one thing. Indeed, everyone makes mistakes of all kinds. *Illinois v. Allen,* 397 U.S. 337, 346-347 (1970). But the mistakes the ALJ made here cannot be condoned. In addition to the "whopper" in her conclusion, the ALJ did not follow the remand order here. And that is quite unpardonable.

The ALJ was instructed to consult a medical expert on the question of whether plaintiff's condition met Listing 4.12. That's because, in her previous opinion, the ALJ provided no more than a perfunctory analysis of whether the plaintiff's condition met listing 4.12, running afoul of Seventh Circuit precedent. *Leida G.*, 2022 WL 4367171, at *4 (citing *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). The ALJ conclusorily stated that the evidence – blood pressure readings – did not meet any of the listing's requirements. She did not mention the numbers, but instead cited exhibit numbers for a handful of reports – reports

5

that actually offered little or no support for her conclusion. Indeed, there were readings in the record that appeared to run counter to the ALJ's conclusion. Accordingly, the ALJ had to "do more than just cite to them and say, in effect, 'there's nothing to see here.'" *Leida G.*, 2022 WL 4367171, at *5. Based on the ALJ's lack of analysis, it appeared "the ALJ [did not] . . . hav[e] the medical expertise to interpret the numbers against the numbers in the listing." *Leida G.*, 2022 WL 4367171, at *6. That's why the ALJ was instructed to employ a medical expert on remand. Yet, the ALJ did inexplicably not do so.

Simply put, that unpardonable failure is clearly cause for another remand. "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). *See also Tasha C. v. Kijakazi*, No. 22 C 816, 2023 WL 3688167, at *3 (N.D. Ill. May 26, 2023) *Alesia v. Berryhill*, 2018 WL 3920534, at *8 (N.D. Ill. Aug. 16, 2018); *Daniels v. Colvin*, 2016 WL 7116582, at *12 (N.D. Ill. Dec. 7, 2016). And, that must be the result here.

The Commissioner attempts to deftly argue that the ALJ complied with the court's remand order "in spirit" because she referenced the findings of state agency reviewing physician, Dr. Treanor, who found that the plaintiff met Listing 4.12 and was presumptively disabled as of the date of plaintiff's September 21, 2021 SSI application. Deft, but not convincing. The court knows the difference between the state agency reviewing physicians who looked at medical files and offered terse conclusions and a medical expert who testifies – and responds to questioning – at an administrative hearing and offers more illuminating medical explanations. Furthermore, the court's remand requiring the ALJ consult a medical expert was issued on September 21, 2022, nearly a year after Dr. Treanor's opinion dated December 30, 2021. (R. 1455, 1458). Clearly, Dr. Treanor's

6

opinion was not a response to, nor compliance with, the remand order.

Timing and title aside, the ALJ made no mention of Dr. Treanor's opinion or any of the doctor's findings when determining whether the plaintiff met Listing 4.12. (R. 1382-83). And, the ALJ specifically said that she accorded Dr. Treanor's "opinion little weight prior to September 21, 2021, but finds her opinion is well supported beginning on September 21, 2021." (R. 1398). Had the ALJ actually been trying to comply with the court's order to consult a medical expert "in spirit" by glancing at a state agency review made prior to that court order, she certainly wouldn't have rejected the only portion of Dr. Treanor's opinion that might be pertinent to plaintiff's original application for DIB.

As this case must be remanded, it is worthwhile to make some additional points, especially because, in addition to the foregoing, this is one of those cases where it looks like there is an elephant in the room. The ALJ noted that the plaintiff testified that she needed to elevate her legs five times a day for an hour. (R. 4517). That's not exactly how the testimony went. At the supplemental hearing in April 2024, plaintiff was asked if she could "give . . . a sense" of how much she needed to elevate her legs years earlier, back in 2015 through 2021. (R. 4516). She said she thought it was "like five times a day . . . so her leg wouldn't get swollen and cause more problems." (R. 4516). When she sat down to do it, she did so for "[p]robably about an hour." (R. 4518). In any event, the ALJ didn't believe that the plaintiff needed to elevate her legs multiple times during the day and, so, refused to adopt any such limitation in her residual functional capacity finding. The ALJ explained that "only her primary provider, Dr. Joshi, has recommended it" but complained that Dr. Joshi was "rather vague, and he did not specify the height of elevation or the frequency." (R. 1396). The ALJ definitely didn't build a decent "logical bridge" mark with that explanation.

7

On May 14, 2019, Dr. Joshi instructed plaintiff to "wear a compression stocking and elevate her feet". (R. 2259). Rather than "rather vague," his instructions seem "rather clear." And, contrary to the ALJ's reading of the record, he certainly wasn't the only healthcare provider to give plaintiff those instructions. Plaintiff was given this medical advice on at least three other occasions before the expiration of her insured status by other doctors or nurses:

>  July 7, 2019 (R. 2236)(Dr. Brody: "Advised low salt and leg elevation.")
> 
> December 1, 2019 (R. 3035) ("Advised low salt and leg elevation.")
> 
> December 28, 2020 (R. 2119) (Nurse Rodriquez/Dr. Romberg: "Elevate both legs as much as possible for control of swelling. Keep your legs up while lying or sitting.")

This advice continued on, consistently, over and over, after the expiration of the plaintiff's insured status as well far too many times to cite comprehensively here. (R. 1868, 1885, 1957, 1968, 2048, 2108, 3720). It is clearly not something the doctors were not genuinely concerned about. And, given the plaintiff's circulation issues, it would seem to be uncontroversial medical advice. The ALJ's rationale for dismissing it entirely – her "logical bridge" – is completely unconvincing.

Here is where that proverbial "elephant" enters the room. The ALJ found that the plaintiff was not disabled because she could perform one of her past jobs. But, the vocational experts at the 2017 and 2024 hearings testified that if a person needed to elevate their legs during the workday, he or she would be unable to do *any* jobs. (R. 72, 4527 ("I believe that's not consistent with sedentary jobs, and basically, any job."). So, the plaintiff would have to have been found disabled if she had to elevate her legs throughout the workday.

Moreover, if the plaintiff couldn't perform any of her past work, that would mean the ALJ's analysis would have had to proceed to the next step, where the Commissioner would have the burden

8

of proving there was other work the plaintiff could do in the national economy. But, given plaintiff's lack of transferable skills, RFC, and age – *see*, 20 C.F.R. § 416.963(d) (plaintiff was "closely approaching advanced age" when she claims she became disabled) and 20 C.F.R. § 416.963(e)(plaintiff was of "advanced age" at the time her insured status expired) – the plaintiff would have to be ruled "disabled" under the Commissioner's Medical Vocational Guidelines. 20 C.F.R. § 404, Subpt. P, App. 2, 201.01, 201.10; *see also Love v. Kijakazi*, No. 21 C 6683, 2023 WL 2664009, at *3 n.4 (N.D. Ill. Mar. 28, 2023); *George A. v. Kijakazi*, No. 18 C 8237, 2022 WL 267937, at *5 (N.D. Ill. Jan. 28, 2022). So the ALJ's reasoning for rejecting any requirement the plaintiff elevate her legs during the workday wasn't just unconvincing, it was wrong – egregiously so.

The plaintiff – indeed, anyone who has worked most of their lives and paid into a government program[5] – deserves better. And so, on remand, the Commissioner is going to have to do better. He is going to have to employ a medical expert to testify regarding whether the plaintiff's condition meets Listing 4.12 and explain why or why not. He is going to have to build a much better "logical bridge" between evidence and conclusions, especially if he wants to reject the notion that doctors want the plaintiff to elevate her legs during the day. He should endeavor to get significant dates right. And, given the two grinding trips the plaintiff has taken through the bureaucracy, he should prioritize this case on remand. And, finally – and one would think, not surprisingly – it is recommended that he assign this case to a different ALJ. *See, e.g., Sarchet v. Chater*, 78 F.3d 305,

---

[5] It's also worth pointing out that the ALJ completely ignored the plaintiff's long work record. The Commissioner argues – correctly – that "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). But, it does bolster plaintiff's credibility, *Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022), and if, as the Commissioner concedes, it *is* one factor, why did the ALJ not even bother to mention it?

309 (7th Cir. 1996); *Holly M. v. Dudek*, No. 23-CV-17007, 2025 WL 933875, at *2 (N.D. Ill. Mar. 27, 2025); *Rafael L. T. v. Kijakazi*, No. 20-CV-3469, 2021 WL 5769525, at *3 (N.D. Ill. Dec. 6, 2021); *Robert M. W. v. Saul*, No. 19 C 3165, 2020 WL 6801842, at *11 (N.D. Ill. Nov. 19, 2020). After all, "to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U.S. 133, 136 (1955).

## CONCLUSION

For the foregoing reasons, the plaintiff's request for a remand [Dkt. #17] is granted, and the defendant's motion for summary judgment [Dkt. #21] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/25/25